ARMSTRONG, Respondent, v. EDWARDS, Appellant.

(209 N. W. 339)

(File No. 5287. Opinion filed June 19, 1926.)

1. **Indians—Sales—Permit to Remove Hay From Indian Allotment, Later Revoked, Held Not to Have Passed Title to Hay, and Hence Permittee's Sale Conveyed No Title.**

Permit by Indian Superintendent, giving right to cut and remove hay from Indian allotment, later revoked because secured by misrepresentation, held not to give permittee seller title to hay which he had already cut and stacked as employee of a third person, and hence his sale to plaintiff conveyed no title.

2. **Appeal and Error.**

Errors did not prejudice any substantial right of appellant, where he had no valid defense to action against him.

---

Note.—See, Headnote (1) American Key-Numbered Digest, Indians, Key-No. 16 (½), 31 C. J. Sec. 84 (Anno); (2) Appeal and Error, Key-No. 1029, 4 C. J. Sec. 2878.

Appeal from Circuit Court, Tripp County; Hon. J. G. Bartine, Judge.

Action by W. S. Armstrong against J. M. Edwards. Judgment for plaintiff and order denying a new trial, and defendant appeals. Affirmed.

*Doherty & Talbott,* of Winner, for Appellant.

MORIARTY, C. This is an action for money had and received. The relevant facts are as follows:

In August, 1918, one F. M. Weaver and appellant entered into an oral contract of employment whereby appellant agreed to cut and stack certain hay for said Weaver. For the performance of this work Weaver agreed to pay appellant $3 per ton. Under this agreement appellant proceeded to cut and stack hay on the land of an Indian allotment, of which the Superintendent of the Rosebud Agency had charge. On August 30, 1918, appellant had cut and stacked the hay on one quarter section, and had some in the windrow on another tract. On that day Weaver gave appellant a check for $384 to apply on the payment for the work. This represented what these parties estimated to be at 80 per cent. of the amount due appellant on the hay then in stack. On September 3,

1918, appellant deposited this check in his bank at Winner, where it was credited to his account. On September 5, 1918, appellant went to the Indian Agency and secured written permits, referred to as leases in the brief. The one of these writings relevant to the issues in this case is as follows:

"For Lessors.

"Allotment No. 5569.          ·          Date 9-5, 1918.

"In consideration of thirty-five ($35.00) dollars, receipt of which is hereby acknowledged, J. M. Edwards of Winner, S. D., is authorized to cut and remove all hay upon the S. E. ¼ —— Sec. —— and —— Sec. 7, T. 40, R. 25, 160 acres, the allotment of Carrie Clairmont, for the season of 1918. This lease shall be valid and in full effect unless revoked and the money refunded in fifteen days from this date by the Superintendent of the Rosebud Agency, South Dakota.

"Approved 9-5, 1918.

"C. C. Covey, Superintendent.
"W. L. G."

On September 14th the check for $384 was charged out of appellant's account in the Winner bank, but the amount was afterward credited to the account again, and it is admitted that appellant received the full amount thereof.

On October 29, appellant represented to respondent that he had this hay for sale. Without examining the hay, respondent gave appellant a check for $100 to apply on the purchase of the hay. On November 1st respondent examined the hay, agreed to pay appellant $8 per ton for the hay then in stack, and assisted appellant in measuring the stacks. At that time respondent gave appellant a check for $1,000. After the measurements had been computed, the parties agreed that there were 200 tons in the stacks, and respondent gave appellant a check for $500 to complete the payment of $8 per ton for the 200 tons. This check was dated and delivered on November 20th. It is admitted that appellant received the full amount of $1,600 on these three checks.

On November 20th the Superintendent at the Rosebud Agency wrote to the appellant a letter, which appellant afterward received, and in which the Superintendent notified appellant that he had secured by misrepresentation the hay permits which had been

issued to him. This letter further notified appellant not to enter upon the allotment for the purpose of removing the hay, and that if he did so enter he would be liable for trespass and also to prosecution under the laws governing Indian lands. A copy of this letter was mailed to Weaver. The boss farmer and Indian police notified respondent not to attempt to remove the hay.

The superintendent treated the cutting of the hay as a trespass by Weaver, and, in view of the fact that Weaver had paid appellant for the work, the superintendent sold the hay to Weaver at $1 per ton. Weaver made the payment and removed the hay. Respondent did not get the hay, nor was any part of his money returned to him.

The case was tried to a jury, which returned a verdict in favor of respondent for $1,600 and interest. From the judgment entered upon said verdict, and from an order denying a new trial, this appeal is taken

Appellant's brief presents numerous assignments of error, dealing with alleged errors of the trial court, and with the alleged insufficiency of the evidence to support the verdict. But all of appellant's contentions depend upon the theory that he had good title to the hay at the time when he made the deal with respondent, and that the title was then and there conveyed to the respondent. This theory is based upon the assumption that the written permit, giving appellant authority "to cut and remove all hay upon the land for the season of 1918," gave him title to the hay which he had cut and stacked as an employee of Weaver, and which he had been paid for cutting and stacking.

In this connection appellant's counsel argue that payment on the $384 check had been stopped, and appellant was obliged to get the permit to protect his rights as against Weaver. But the fact that this check was credited to appellant's account on September 3d, was paid at the bank on which it was drawn September 7th, and was not charged back until September 14th, while the permit was issued to appellant on September 5th, tends to show that this contention is not supported by the record. The record seems rather to support the theory that, when Weaver found that appellant was trying to secure rights to the hay, Weaver sought to protect himself by stopping payment on the check.

This is further shown by the fact that on October 7th the amount of the check was again credited to appellant's account.

[1] The securing of the permit to cut and remove hay cannot be construed as conveying to appellant the title to hay already cut and stacked, and for the cutting and stacking of which he had already received payment. He had no title at any time to the hay in controversy; therefore he conveyed none to respondent.

[2] As appellant had no valid defense to respondent's demand, any error there may have been in the trial of the case could not prejudice any substantial right of appellant. Therefore any such error cannot constitute reversible error.

The judgment and order appealed from are affirmed.